306 So.2d 751 (1975)
Wilson SMITH
v.
The NORTH AMERICAN COMPANY FOR LIFE, ACCIDENT AND HEALTH INSURANCE.
No. 55023.
Supreme Court of Louisiana.
January 20, 1975.
*752 Francis E. Mire, Lake Charles, for plaintiff-applicant.
Robert W. Clements, Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, for defendant-respondent.
SUMMERS, Justice.
The North American Company for Life, Accident and Health Insurance issued a group credit accident and health policy in 1965 to CIT Financial Corporation providing credit insurance for CIT Financial Corporation and its subsidiary companies. Universal CIT Credit Corporation is a subsidiary of CIT Financial Corporation, and therefore became a creditor under the policy pursuant to a provision of the group policy.
On May 17, 1967 Wilson Smith negotiated for and obtained a loan from Universal CIT Credit Corporation to purchase a truck. Shortly thereafter he received an application card from CIT which offered accident and health insurance with The North American Company to cover the payments due on his loan. Smith accepted the offer and signed the application card which contained this printed clause: "I certify that I am now in good health; also that I have no sickness nor injury for which I have consulted or been treated by a physician except (give full particulars):" In the short space provided, Smith inserted: "operated on twice in 1964 for appendix now back on the job and doing fine." The application was signed by Smith on June 9, 1967.
Pursuant to this application The North American Company issued a certificate of credit, accident and health insurance to Smith effective June 9, 1967 insuring against "sickness or disease contracted and first manifesting itself after the Effective Date and prior to the Expiration Date" of the certificate. The clause "Disability caused by preexisting conditions is not covered" is prominently printed across the face of the certificate. Monthly benefits under this certificate were in an amount equal to the monthly obligation to Universal CIT Credit Corporation, plus the cost of the insurance.
Smith is a railroad locomotive engineer who, at the time of this trial in June 1969, had been employed as such by Southern Pacific for 26 years. He was so engaged when on February 22 or 23, 1968 he experienced pain in his left shoulder, arm and hand. He therefore consulted his physician, Dr. Steve F. Price, complaining at that time of pain in "his left neck and shoulder, particularly the left shoulder". Dr. Price treated him "intermittently", hospitalized him in March and consulted an orthopedic surgeon. He treated him until June 11, 1968. Smith returned to the doctor's office later with a recurring pain in the region of his shoulder and he was again treated by Dr. Price until August 26, 1968. Smith returned to work on September 1, 1968.
*753 In the meantime, after experiencing difficulty obtaining a claim application form from the local CIT office, Wilson filed a claim on April 27, 1968 for the accident and sickness insurance monthly benefits of $79.84 to be paid to CIT to discharge his monthly loan payments during his disability. The claim was rejected, however, and the premiums he had paid were refunded.
When his claim was not honored, Smith instituted suit on September 9, 1968 against The North American Company for $436.50, plus penalties and attorneys' fees. The North American Company defended on the ground that the credit insurance certificate was issued to Smith based upon the representations made in his application, and the application contained untrue statements relating to Smith's previous physical condition which were material to the risk and rendered the insurance contract null, void and unenforceable. And, alternatively, if the insurance contract was not null, the insurer pleaded that no coverage was provided under the terms of the insurance because the disabling sickness Smith complained of antedated the effective date of the insurance certificate.
During the trial of the case, when counsel for the insurer sought to introduce the application for insurance into evidence, plaintiff's counsel objected to its admission into evidence because a correct copy of the application was not attached to or otherwise made a part of the policy, or contract, when issued and delivered, all as required by Section 618, subd. A of Title 22 of the Revised Statutes, which provides:
"A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. This provision shall not apply to policies or contracts of industrial insurance subject to R.S. 22:213A(1) and 22:259(2)."
Defense counsel answered this objection by pointing out that plaintiff's counsel had opened the door to this line of questioning when he sought and obtained by way of written interrogatories to an official of the insurer company "the answers of Wilson Smith to each question in the application for insurance or in lieu of that, you may attach a copy of his application." Defense counsel further argued that the application was made a part of the base insurance policy in the hands of CIT by reference because the base policy stipulated that "The policy and the application of the policy holder which is attached to and made a part of the policy, constitutes the entire contract." And, further, attachment of the application to the certificate of insurance delivered to Smith was unnecessary because the application form signed by Smith contained this clause: "I acknowledge receipt of a copy of this form with Notice of Proposed Insurance describing coverage."
Plaintiff's counsel's objection was overruled, and the trial judge permitted the introduction of the application form.
The defense then sought to establish by the testimony of Dr. Price and the medical report he submitted in connection with Smith's claim to the insurer, and by Smith's testimony, that Smith's disabling complaints were the result of a preexisting condition which manifested itself in 1965, long before the effective date of the insurance certificate.
Dr. Price's written report dated July 29, 1968, submitted to support Smith's claim for disability payments, diagnosed his condition as "Osteoarthritis of the Acromioclavicular joint." Dr. Price also answered inquiries addressed to him by the insurer in which he advised that the primary cause of the disability beginning February 24, 1968 was osteoarthritis of the acromioclavicular jointcervical disc syndrome, and the cervical disc syndrome was responsible for the peripheral neuritis Smith was suffering from. The evidence hints at hospital admission records disclosing that Smith *754 has suffered from shoulder and neck pain for some time. Questioning of Dr. Price, however, brought out that the neck condition of 1965 was not the same as the shoulder and arm complaint of 1968, and that the latter was disabling in itself.
In his claim application Smith referred to his sickness as "Pain in Left Arm and Neck." The claim form also represented that Smith "Never Suffered from Arm Before 2-23-68".
Despite the doctor's opinion, and admitting that he had trouble with his neck in 1965, Smith testified that the shoulder and arm pain and disability which manifested itself in February 1968 was not associated with the 1965 neck trouble. He testified that he had entirely recovered from the neck trouble of 1965, and that he had never been hospitalized for that condition. Smith asserts that the records of his condition made by Dr. Price's assistants were inaccurate; that his hospitalization in 1965 was for surgery involving appendicitis and hernia, entirely unrelated to his shoulder and arm complaint.
An official of The North American Company testified that if Smith had disclosed the facts surrounding his 1965 neck condition, the policy would not have been issued.
On the basis of this record, the trial judge held that "Plaintiff either intentionally or unintentionally failed to set forth the disabling condition which had previously existed in his neck and shoulder and which had caused him to be hospitalized during the year 1965 and which condition has required him to remain off his job with the railroad for a period of time. The plaintiff further failed to set forth in the application the fact that this condition was a reoccurring condition and that he was treated off and on for this same condition in his neck and shoulders."
Following the trial, plaintiff appealed to the Third Circuit, where the appeal was dismissed as untimely. La.App., 265 So.2d 781 (1972). Smith then successfully brought an action to annul the trial court judgment because it was not signed in open court as required by Article 1911 of the Code of Civil Procedure. When the action was denied, Smith again appealed and the action for nullity was maintained. La. App., 284 So.2d 670 (1973). Thereafter, the judgment was signed in open court and the case was again appealed to the Third Circuit where the judgment dismissing plaintiff's suit on the merits was affirmed. La.App., 295 So.2d 483 (1974). Writs were granted on plaintiff's application.
In our opinion, the trial court judge erroneously admitted the application for insurance into evidence. Thus all evidence concerning pre-existing conditions not disclosed in the application which may have resulted in Smith's disability of FebruarySeptember 1968 was improperly considered. Failure to disclose that evidence is not available to the insurer as a defense because a correct copy of the application for insurance was not "attached to or otherwise made a part of the policy."
This Court has in two cases carefully considered the identical proposition presented here in connection with Act 227 of 1916, the predecessor statute to Section 618, subd. A of Title 22 of the Revised Statutes. Although some changes in the statute have been made, the basic principle is expressed in both. In Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926) the Court said:
"The purpose of the law is that the insured shall have in his possession during his lifetime, and that the beneficiary shall have after the death of the insured, the entire evidence of the contract. It would not serve that purpose, but would violate the spirit, if not the very letter, of the law, if the statute should be so construed that a statement made by the insured in an application for `establishing' or `placing in force' a policy that was not theretofore placed in force by the payment of the first premium need not be indorsed upon, or attached to, the policy to form a part of the contract."
*755 Two years later in Whitmeyer v. Liberty Industrial Life Ins. Co., 166 La. 328, 117 So. 268 (1928) this Court again stressed the importance of requiring compliance with the statute, saying:
"By the provisions of this act it is necessary that the statement relied upon as a defense be contained in a written application for the policy, and, if it be so contained, then that the statement be indorsed on the policy at the time it is issued, or else that the application containing the statement be attached to the policy at the time. In the absence of a written application, containing the statement, it is not sufficient that the statement be indorsed on the policy. It must be contained in a written application for it. The law so requires, and prohibits a waiver of the requirement, in order to more securely protect the insured and the beneficiary against statements appearing on the face of the policy that were not made by the insured or the applicant."
The spirit of the current legislation is expressed in these two cases. The requirement is not satisfied by any clause or provision on the base policy which is not delivered to the insured. The certificate of insurance issued and delivered to Smith is the "policy" as that word is used in the statute (La.R.S. 22:618, subd. A). Nor can a clause in the application itself whereby the applicant acknowledges receipt of a copy of the application before the policy is issued circumvent the requirement that a copy of the application be attached to the policy.
And we do not agree with the insurer's contention that plaintiff opened the door to the introduction of the application into evidence when he propounded interrogatories relative to the application to an official of the insurer company. As we read the record, defense counsel offered the interrogatories relating to the application for the limited purposes of showing that the certificate of insurance was delivered to Smith by an employee of CIT. The object of the showing was to establish that the employee was an agent of the company and as such subject to being called as under cross-examination. La. Code Civ.P. art. 1634 (1960).
In light of our conclusions, it is unnecessary to consider whether Smith had a preexisting condition prior to the effective date of the insurance which was responsible for his disability.
Plaintiff's claim for penalties and attorneys' fees is also meritorious. In light of the clear provisions of the statute (La.R.S. 22:618), requiring that a copy of the application be attached to the policy, and this Court's decisions in Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926) and Whitmeyer v. Liberty Industrial Life Ins. Co., 166 La. 328, 117 So. 268 (1928), we cannot agree that the insurer had "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard," (La.R.S. 22:657) to decline paying the policy benefits to Smith. Penalties in double the amount due under the terms of the policy will be assessed against defendant and awarded to plaintiff, with legal interest thereon beginning thirty days after notice of claim was furnished to defendant until paid, and reasonable attorneys' fees. (La.Civil Code art. 1938, La.R.S. 22:657).
It is therefore ordered, adjudged and decreed that there be judgment herein in favor of Wilson Smith and against The North American Company for Life, Accident and Health Insurance in the full and true sum of $873 as penalties with interest on $436.50 at the rate of seven percent from May 27, 1968, until paid; and in the sum of $500, as attorneys' fees; and for all costs.